STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

> **FILED**
>
> May 27 2021
>
> SUSAN Y. SOONG
> CLERK, U.S. DISTRICT COURT
> NORTHERN DISTRICT OF CALIFORNIA
> SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:21-cr-00217 MMC |
| Plaintiff, | |
| v. | VIOLATIONS: 18 U.S.C. § 1344 – Bank Fraud; 18 U.S.C. § 1343 – Wire Fraud; 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5 – Securities Fraud; 18 U.S.C. §§ 981(a)(1)(C) & 28 U.S.C. § 2461(c) – Criminal Forfeiture |
| ANDREW CHAPIN, | |
| Defendant. | SAN FRANCISCO VENUE |

# I N F O R M A T I O N

The United States Attorney charges:

## Introductory Allegations

At all times relevant to this Information:

1.      The defendant, ANDREW CHAPIN, resided in San Francisco, California, in the Northern District of California.

2.      In 2014, CHAPIN founded Benja Inc., a digital advertising company based in San Francisco, California, in the Northern District of California.  Benja provided "shoppable media," by placing digital advertisements for companies with overstocked goods on websites that allowed shoppers to purchase products in the advertisement itself without being redirected to another website.

3.      Busey Bank was a financial institution, as that term is defined in Title 18, United States

INFORMATION

1   Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation
2   ("FDIC").

3       4.    The entity identified in this information as "VC Firm E," was a venture capital firm
4   headquartered in New York.

5       5.    Investor R.H. was an individual who resided in the Northern District of California.

6       6.    The entity identified in this information as "VC Firm CC," was a venture capital firm
7   headquartered in Missouri.  Manager C.H. was the founder of VC Firm CC.

8   <u>The Scheme to Defraud</u>

9       7.    In 2019 and 2020, CHAPIN sought additional investors and lines of credit for Benja.
10  CHAPIN portrayed Benja as a successful company to creditors and investors, claiming that Benja
11  generated $6,200,000 in revenue in 2018, and $13,200,000 in revenue in 2019.  CHAPIN also told
12  investors and creditors that Benja had signed large contracts with numerous well-known companies,
13  including Nike, Fanatics, Patagonia, and Backcountry, to place advertisements for their excess
14  inventory.  In truth, CHAPIN fabricated Benja's revenue and did not have business contracts with any of
15  these companies.

16      8.    To perpetuate the fraud scheme, CHAPIN sought lines of credit totaling $5,000,000 from
17  Busey Bank in 2019 and 2020.  To secure the lines of credit, CHAPIN provided materially false
18  financial information to Busey Bank.  For example, CHAPIN fabricated millions in revenue and account
19  receivables from companies that never had contracts with Benja.  Once the bank approved and issued
20  the lines of credit, CHAPIN used the money to pay off other creditors and investors, and to settle
21  personal expenses.

22      9.    CHAPIN also sought investments from numerous venture capital firms.  For example,
23  CHAPIN raised $1,000,000 from VC Firm E, and raised at least $1,800,000 during a SAFE (simple
24  agreement for future equity) fundraising round from multiple individual investors.  To secure
25  investments, CHAPIN provided materially false information to investors, including fabricating millions
26  in revenue and account receivables from companies that never had a business contract with Benja.
27  CHAPIN used the money to pay off other creditors, investors, to settle personal expenses, and
28  transferred funds to his personal crypto-currency exchange account.

INFORMATION

10.     In 2018, CHAPIN also secured investments in exchange for shares of Benja stock after misleading individual investors.  For example, CHAPIN misled Investor R.H. by falsely claiming that VC Firm CC invested in Benja when it had not.  The individual investor relied on CHAPIN's false statements and invested $100,000 in exchange for Benja stock.

<u>COUNT ONE</u>:        (18 U.S.C. § 1344 – Bank Fraud)

11.     The factual allegations in Paragraphs 1 through 10 are re-alleged and incorporated herein as if set forth in full.

12.     Beginning at an unknown date, but no later than June 2019, and continuing to in or about September 2020, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendant,

ANDREW CHAPIN,

did knowingly, and with intent to defraud, devise, and execute, a scheme and artifice to defraud Busey Bank as to a material matter and to obtain moneys, funds, credits, assets, and other property owned by, and under the custody and control of Busey Bank, namely, lines of credit totaling $5,000,000, by means of material false and fraudulent pretenses, representations, and promises, and by concealment of material facts.  In sum and substance, CHAPIN devised and executed a scheme and artifice to provide Busey Bank with materially false and fraudulent information as part of the application process to secure lines of credit from Busey Bank.

<u>MANNER AND MEANS OF THE SCHEME TO DEFRAUD BUSEY BANK</u>

13.     CHAPIN, and others known and unknown, used the following means and manners, among others, to accomplish the object of the scheme.

      a.     In June of 2019, Chapin applied for a $1,000,000 line of credit for Benja from Busey Bank.  CHAPIN designated Benja's assets as collateral for the loan and submitted a July 2019 Aged Receivables Report listing more than $2,000,000 in receivables, including $1,600,000 in current receivables from Nike, Patagonia, Backcountry, and Fanatics.  In truth, CHAPIN falsified the aged receivables report, as CHAPIN well knew at the time that Benja did not have business contracts with Nike, Patagonia, Backcountry, or Fanatics.

b. In February of 2020, CHAPIN requested an increase in Benja's line of credit to $3,000,000.  CHAPIN provided Busey Bank a January 2020 Aged Receivables Report listing more than $4,000,000 in receivables, including approximately $1,256,000 in current receivables from Fanatics.  In truth, CHAPIN falsified the aged receivables report, as CHAPIN well knew at the time that Benja did not have a business contract with Fanatics.

c. In July of 2020, CHAPIN requested an increase in Benja's line of credit to $5,000,000, claiming the funds were for a new business opportunity with Spotify. CHAPIN submitted a July 2020 Aged Receivables Report listing more than $6,000,000 in receivables, and including Nike, Fanatics, Backcountry, and Patagonia as customers.  In truth, and as CHAPIN well knew at the time, Benja did not have a new business opportunity with Spotify or business contracts with Nike, Patagonia, Backcountry, and Fanatics.

d. The financial information CHAPIN submitted to Busey Bank was material to Busey Bank's decision to issue lines of credit totaling $5,000,000 to Benja.

All in violation of Title 18, United States Code, Sections 1344.

<u>COUNT TWO</u>: (18 U.S.C. §§ 1343 – Wire Fraud)

14. The factual allegations in Paragraphs 1 through 13 are re-alleged and incorporated herein as if set forth in full.

15. Beginning at an unknown date, but no later than March 2020, and continuing to in or about June 2020, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendant,

ANDREW CHAPIN,

knowingly and with the intent to defraud, participated in, devised, and intended to devise a scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by means of omission and concealment of material facts.

/ / /

INFORMATION

THE SCHEME AND ARTIFICE TO DEFRAUD

16.   CHAPIN made several material omissions and false statements to induce a $1,000,000 investment from VC Firm E.

MANNER AND MEANS

17.   CHAPIN, and others known and unknown, used the following means and manners, among others to accomplish the object of the scheme.

    a.   Submitted fabricated financial statements to VC Firm E showing that Benja's total revenue for 2019 was more than $13,000,000.

    b.   Misled VC Firm E by falsely listing Nike, Fanatics, Backcountry, and Patagonia as Benja customers and as representing more than $7,000,000 of the total revenue for 2019.

    c.   Instructed and paid a Benja employee to impersonate representatives from Nike and instructed an individual to impersonate a representative from Fanatics during reference calls with VC Firm E.

    d.   Used the $1,000,000 investment from VC Firm E to pay off another creditor.

USE OF THE WIRES

18.   On or about March 28, 2020, in the Northern District of California and elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud, the defendant,

ANDREW CHAPIN,

did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of a wire communication, certain writings, signs, signals, pictures, and sounds, specifically, an email from CHAPIN in California to a VC Firm E representative outside of California attaching four Excel spreadsheets containing false representations regarding Benja's customer base and total revenue for 2017 through 2020.

All in violation of Title 18, United States Code, Section 1343.

COUNT THREE:    (15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5 - Securities Fraud)

19.   The factual allegations in Paragraphs 1 through 18 are re-alleged and incorporated herein as if set forth in full.

INFORMATION

20.     Beginning at an unknown date, but no later than November 2018, and continuing to in or about September 2020, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendant,

ANDREW CHAPIN,

willfully and knowingly, used a manipulative or deceptive device, in connection with the purchase and sale of securities, in violation of Title 17, United States Code, Section 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5, by employing devices, schemes, and artifices to defraud, and making untrue statements or misleading omissions of material fact.  Specifically, CHAPIN made materially false and fraudulent representations and concealed material facts about Benja's revenue and current investors to induce a $100,000 investment from Investor R.H. in exchange for 1,278 shares of common stock in Benja.

<u>MANNER AND MEANS OF THE SCHEME TO DEFRAUD INVESTOR R.H.</u>

21.     CHAPIN, and others known and unknown, used the following means and manners, among others to accomplish the object of the scheme.

a.     In November of 2018, a Benja investor introduced CHAPIN to Investor R.H. CHAPIN emailed fabricated financial statements to Investor R.H. that showed more than $4,000,000 in revenue for Benja in 2018.

b.     CHAPIN informed Investor R.H. that an institutional venture capital firm based in St. Louis, Missouri, VC Firm CC, was going to make a $1,500,000 investment in Benja.  In truth, CHAPIN knew that VC Firm CC was not investing in Benja.

c.     CHAPIN instructed an individual to impersonate Manager C.H. during a reference call with Investor R.H.  The individual told Investor R.H. that VC Firm CC used a third party to verify Benja's financials and had made customer reference calls, which were positive.

d.     CHAPIN created a fictitious email address to impersonate Manager C.H. and respond to Investor's R.H.'s questions about the shareholder's agreement. Shortly thereafter, Investor R.H. signed a shareholder's agreement to purchase 1,278 shares of common stock in Benja for $100,000.

INFORMATION

e.      The investment CHAPIN sold to Investor R.H. was an investment contract and therefore securities under Title 15.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17 Code of Federal Regulations, Section 240.10b-5.

FORFEITURE ALLEGATION: 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c) (Criminal Forfeiture)

22.      All of the allegations contained in this Information are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

23.      Upon a conviction for the offenses alleged in Counts One through Three of this Information, the defendant,

ANDREW CHAPIN,

shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) all property constituting, and derived from, proceeds the defendant obtained directly and indirectly, as the result of those violations, including, but not limited to, all real property or personal.

24.      If any of the aforementioned property, as a result of any act or omission of the defendants,

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third person;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property that cannot be divided without difficulty;

any and all interest the defendants have in other property shall be vested in the United States and forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

/ / /

INFORMATION

1    All in violation of Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States

2    Code, Section 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.

3

4    DATED: May 27, 2021_____          STEPHANIE M. HINDS
                                          Acting United States Attorney
5

6                                         /s/ Kimberly Hopkins_____
                                          KIMBERLY HOPKINS
7                                         SCOTT JOINER
                                          Assistant United States Attorneys
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INFORMATION