Pages 1 - 24

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MAXINE M. CHESNEY, JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 21-cr-00217-MMC |
| | ) | |
| ANDREW JAMES CHAPIN, JR., | ) | |
| | ) | |
| Defendant. | ) | San Francisco, California |
| _____ | ) | |

Wednesday, June 16, 2021

## TRANSCRIPT OF PROCEEDINGS

**APPEARANCES:**

For Plaintiff:            STEPHANIE M. HINDS
                          Acting United States Attorney
                          450 Golden Gate Avenue, 11th Floor
                          San Francisco, California  94102
                  BY:  **KIMBERLY E. HOPKINS**
                       **SCOTT D. JOINER**
                       **ASSISTANT UNITED STATES ATTORNEYS**


For Defendant:            LAW OFFICE OF RANDY SUE POLLOCK
                          286 Santa Clara Avenue
                          Oakland, California  94610
                  BY:  **RANDY SUE POLLOCK, ESQ.**


Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
                          Official Reporter, U.S. District Court
                          (Appearing by AT&T Telecom)

| | |
|---|---|
| **Wednesday, June 16, 2021** | **1:50 p.m.** |

## P R O C E E D I N G S

**THE COURTROOM DEPUTY:**  Now calling Criminal Case No. 21-217, United States of America versus Andrew James Chapin, Jr.  Will counsel please state your appearances for the record, starting with government counsel.

**MS. HOPKINS:**  Good afternoon, Your Honor.  Kimberly Hopkins and Scott Joiner for the United States.

**THE COURT:**  Good afternoon.

**MS. POLLOCK:**  Good afternoon, Your Honor.  Randy Sue Pollock on behalf of Andrew Chapin, who is present.

**THE COURT:**  All right.  Good afternoon.  We had some technical difficulties a short while ago, so I've already confirmed that the courtesy copy I got of the plea agreement that was sent to me earlier in either this week or the end of last week has not changed at all when the formal plea agreement was signed.

And if everybody's ready to proceed, then, what I'm going to ask, Mr. Chapin, the law requires me to go through a whole series of questions with you, many seem, I think, are will seem to you repetitive of what's in your plea agreement.  But we need to do that because it is a serious matter, as I'm sure you are aware.  Your answers should be under oath.  I'm going to ask the clerk to swear you in.

**THE COURTROOM DEPUTY:**  Please raise your right hand.

1      (Defendant placed under oath)

2              THE DEFENDANT:  I do.

3              THE COURT:  Okay.  All right.  What is your full true

4      name, sir?

5              THE DEFENDANT:  Andrew James Chapin, Jr.

6              THE COURT:  Mr. Chapin, I was handed earlier in this

7      proceeding, as you know, a copy of a document entitled "Plea

8      Agreement."  On the last page it has what appears to be your

9      signature.  Did you sign that, sir?

10             THE DEFENDANT:  I did, Your Honor.

11             THE COURT:  And Ms. Hopkins and Ms. Pollock, are

12     those your signatures?

13             MS. HOPKINS:  Yes, Your Honor.

14             MS. POLLOCK:  Yes, Your Honor.

15             THE COURT:  All right.  Mr. Chapin, before you signed

16     the plea agreement, did you go over it in full with your

17     attorney?

18             THE DEFENDANT:  I did, Your Honor.

19             THE COURT:  Are you satisfied that at least as you

20     stand here at this time, that you do understand everything in

21     it?

22             THE DEFENDANT:  Yes.

23             THE COURT:  All right, very good.  All right.  Well,

24     I'm just going to use the plea agreement, then, as a starting

25     point.  And I also want to just have in front of me the

1  charging document, which in this instance is an information.

2      Correct?

3          **MS. HOPKINS:**  Correct.

4          **THE COURT:**  All right.  And I believe that there was

5  a waiver, but I don't think I actually have it in our file.

6  So if I could just confirm that.

7      Did the Magistrate Judge conduct a hearing in which

8  Mr. Chapin waived the filing of a formal indictment?

9          **MS. POLLOCK:**  Yes, Your Honor.

10          **THE COURT:**  Okay.  Thank you.  Then I'll keep going,

11   at this time.

12      This information alleges several counts.  And it's the

13  defendant's intent, as I understand it, to change his plea to

14  guilty to all of the counts.

15      Oh, okay.  Yeah.  All right.  Now, those three counts

16  charge, respectively, bank fraud, wire fraud, and securities

17  fraud.  And those are all felony counts.

18      Each one of them, under the law, has certain limits.  In

19  other words, what the government would have to prove if you

20  decided to go to trial, Mr. Chapin.  So, I'll just take them

21  separately so there isn't any confusion here.

22      For bank fraud, the government would have to prove that

23  you knowingly executed a scheme to defraud a financial

24  institution as to a material matter, something important that

25  would affect their decision in some way; that you did so with

1   the intent to defraud that institution; and that the particular

2   institution was insured by the FDIC, the Federal Deposit

3   Insurance Corporation.  Ordinarily, a bank.

4        Do you understand that's what the government would have to

5   prove, if you did not decide to plead guilty?

6             **THE DEFENDANT:**  I do, Your Honor.

7             **THE COURT:**  Just as every crime has a basic number of

8   facts that have to be proved to meet its elements, every crime

9   has a set of penalties.  Not what any individual necessarily

10  would get as a sentence, but the most they can receive.  And

11  also sometimes a minimum.  For this particular case, the

12  maximum prison sentence anyone could receive, whether they

13  went to trial, pled guilty or otherwise for Count 1.  And

14  Count 1, just so that we're clear, the bank fraud count, is

15  charged under Title 18 of the United States Code, Section

16  1344.

17       However, let me double-check that, because there may be a

18  typographical error in your plea agreement.  Okay.  We can fix

19  that, if it's there.  All right.  Just give me a moment to

20  confirm which of the numbers is correct.

21       I looked at this before, this particular information, when

22  you go to find where the counts start.  I just want to see

23  Count 1.  Oh, I'm sorry, I'm looking at the -- sorry.  Let me

24  go back to the -- okay.  Count 1 is charged under 1344.  Okay.

25  No, I'm sorry; there is no typographical error.  Never mind.

1        All right.  So 1344, the maximum penalties for that

2   violation, again, as I said, a 30-year penalty in prison, a

3   maximum fine of $1 million restitution in whatever amount

4   somebody may have lost money because of the crime charged.  The

5   supervised-release term is not high, it is three years.  There

6   is a mandatory special assessment of $100 per felony count.

7        So first of all, the 30 years and the $1 million and the

8   three years for supervised release are maximums.  The $100,

9   which frankly is probably not your biggest concern here, but

10  that's a mandatory.  In other words, whether you can afford it

11  or not, I have to order that you pay $100 for each of these

12  felonies.  The others are maximums.

13       Do you understand what the maximums are here?

14            **THE DEFENDANT:**  I do.

15            **THE COURT:**  Okay.  Then let's go wire fraud.  Now,

16   that's under Section 1343 of Title 18.  And so for wire fraud,

17   the elements are that you knowingly participated in, devised,

18   or intended to devise -- in other words, set up,

19   essentially -- a scheme or artifice to defraud.  Or a scheme

20   or artifice for obtaining money or property by means of false

21   and/or fraudulent pretenses, representations or promises.

22   That's one element.

23       The next one is the statements made or facts omitted as

24  part of the scheme were material.  And here, they're actually

25  giving you a definition of it.  In other words, they had a

1   natural tendency to influence or were capable of influencing a

2   person to part with money or property.  That you acted with

3   intent to defraud, that is, the intent to deceive and cheat,

4   and used or caused to be used a wire communication to carry out

5   or attempt to carry out an essential part of the scheme.  In

6   modern society that can be a telephone, it can be email,

7   essentially how most people communicate these days, anyway.

8        All right.  Do you understand what the elements are?

9              **THE DEFENDANT:**  I do, yes.

10             **THE COURT:**  Okay.  The penalties here are different.

11   The maximum term in prison is 20 years.  The maximum fine is

12   something of a dependent idea.  It's either $250,000, or not

13   more than the greater, the larger of, twice the gross gain or

14   twice the gross loss.  All right.

15       So it could be -- hm.  Is this an alternative that the

16   government can prove up, then?  Or does one of these control

17   the other, idea?  Does anybody know?

18       In other words, can the government say 250, or is that

19   like -- it can't be the maximum.  So I guess it could be

20   either -- $250,000 as a minimum?

21             **MR. JOINER:**  Scott Joiner for the government,

22   Your Honor.  It's an alternative.  So the maximum fine is

23   either going to be $250,000 or twice the gross gain or twice

24   the gross loss.  But we would have to prove that up --

25             **THE COURT:**  Uh-huh.

1      **MR. JOINER:**  -- in order to allege that in the

2  charging document in order to trigger that alternative fine

3  provision.

4      **THE COURT:**  I see.  So that one could just have a

5  fine without making the calculation -- I mean a fine without

6  making that calculation at all, and just -- but it can't be

7  more than $250,000 at that point.  It could be less, but not

8  more.

9      **MR. JOINER:**  (Inaudible) dollars, Your Honor, is if

10  the government proved up the gross grain gain or --

11      **THE COURT:**  Yes, the alternative.  I understand that.

12  So it's just a little bit unusual, so it is an alternative.

13      **MR. JOINER:**  It is an alternative.

14      **THE COURT:**  Okay.  All right.  So, all right.

15   Having cleared that up, if it needed clarification, do you

16  understand what the exposure is on a fine, sir?

17      **THE DEFENDANT:**  I do, Your Honor.

18      **THE COURT:**  Okay.  Then we have the question of

19  restitution again that can be ordered, and may have to be

20  ordered, if it exists.  Supervised release.  Again, the

21  maximum term is three years.  And again, the $100 mandatory

22  penalty assessment for that felony count as well.

23   So do you understand the penalties that apply?

24      **THE DEFENDANT:**  I do, Your Honor.

25      **THE COURT:**  All right.  Then lastly, on securities

1    fraud, this would be under Title 15 of the United States Code,

2    Sections 78j(b) and 78ff, as well as 17 C.F.R. --  that's the

3    Code of Federal Regulations, Section 240.10b-5.

4        All right, here are the elements.  That you did knowingly

5    and willfully use or employ a manipulative or deceptive device.

6    The manipulation or deception was in connection with the sale

7    of a security, a B stock, bond, whatever.  And, the

8    manipulation or deception constituted a false statement or

9    misleading omission of material fact.

10       So do you understand what the elements of securities fraud

11   are?

12            **THE DEFENDANT:**  I do, Your Honor.

13            **THE COURT:**  And then here we have a maximum prison

14   term of 20 years.  The fine, for whatever reason, goes up

15   substantially.  A maximum fine of $5 million.  Restitution,

16   again, as determined.  And the supervised release maximum term

17   stays the same.  The same $100 penalty assessment.  So we're

18   up to a total of 300 now on penalty assessments.

19       Also, I think for all of these, there can be a

20   forfeiture -- which I may not have mentioned -- of any money or

21   property that was used in connection with any of these crimes.

22       So do you understand the penalties, the maximum ones, and

23   the mandatory that go along with securities fraud?

24            **THE DEFENDANT:**  I do, Your Honor.

25            **THE COURT:**  All right.  Also, as you acknowledge in

1    the plea agreement, it is possible that a sentence on these

2    individual offenses could be ordered to run consecutively.  In

3    other words, stack them up, not just have them all be one

4    penalty on all of them.

5         So, do you understand that as well?

6              **THE DEFENDANT:**  Yes.

7              **THE COURT:**  All right.  I'm not trying to shake you

8    up by saying that, but it's a possibility.  And -- all right.

9         So let's go over your rights for a minute.  We'll go back

10   to the facts.  You don't have to plead guilty.  I'm sure you

11   understand that.  If you wanted, you could have a trial.  If

12   you did, 12 jurors would have to be satisfied your guilt had

13   been proved beyond a reasonable doubt.  At a jury trial, you

14   would have the right to counsel, and at no cost to yourself, if

15   you cannot afford counsel.

16        Ms. Pollock, are you retained in this matter?

17             **MS. POLLOCK:**  (Inaudible)

18             **THE COURT:**  That's what I understood or expected.

19        (Reporter interruption)

20             **THE COURT:**  Oh, it was quiet.  She said yes.

21        (Reporter interruption)

22             **THE COURT:**  By the way, if you can't hear me, as you

23   started to say you couldn't hear, I moved the microphone

24   closer to myself.  That won't help you hear Ms. Pollock, but

25   -- anyway.

1        **MS. POLLOCK:**  I will, thank you.

2        **THE COURT:**  Okay.  So if this turns out to be too

3    loud for anybody, just tell me.

4        Okay.  So you wouldn't lose Ms. Pollock, if you go forward

5    on the guilty pleas.  But she would then proceed to represent

6    you in connection with judgment and sentencing, not in

7    connection with contesting, for example, the charges alleged

8    against you.  You won't lose her entirely, but you won't have

9    her defending you in a trial.

10       All right.  Now, also at the trial, you'd have a right to

11   confront and cross-examine all the witnesses against you, see

12   all the government's evidence, call witnesses on your own

13   behalf, present evidence on your own behalf.  And to have the

14   Court issue subpoenas to bring that evidence and those

15   witnesses to court on your behalf.

16       You have a right to remain silent at trial.  You can't be

17   forced to testify.  And if you decided not to, by the way, it

18   couldn't be commented upon in any way, or used against you in

19   any way.  Because you have a right to remain silent.

20       Let's start with that.  You understand you have a trial

21   right, with all that goes along with it?

22       **THE DEFENDANT:**  I understand, Your Honor.

23       **THE COURT:**  Okay.  There are some other rights you

24   have that are primarily pre-trial.  For example, you could

25   move to suppress -- in other words, keep out -- evidence,

1   whatever evidence you think the government may have obtained

2   wrongly, including if you made any statement to the police or

3   otherwise, and you felt it was not properly obtained.  If you

4   plead guilty, you give up those rights.

5       You would have a right to rely on affirmative defenses.

6   Those are usually defenses that don't necessarily contest the

7   correctness of the charge and the facts that it's based on, but

8   if there's some other reason, separate reason why the

9   government should not be able to go forward, such as they

10  waited too long to bring the case or something of that nature.

11  So those are called affirmative defenses.  You give those up if

12  you plead guilty.

13      Also, you have probably been receiving evidence from the

14  government by way of what's called "discovery."  And if you

15  plead guilty, even if they get more evidence or other things

16  are developed on the government's side, they don't necessarily

17  have to give those to you.  So you do give up those additional

18  rights as well.  Are you aware of that?

19          **THE DEFENDANT:**  Yes I am, Your Honor.

20          **THE COURT:**  All right.  If you went to trial and you

21  had the misfortune of having been found guilty, you would have

22  the right to appeal, to have counsel appointed for you.  And

23  just like before the appeal, if you could not afford counsel

24  or became unable to afford counsel, then counsel would be

25  appointed for you at no cost.  And that applies on appeal as

1   well.

2       In this instance, because of the plea agreement, if you

3   plead guilty, you won't be able to challenge your plea or your

4   sentence except on certain limited grounds, which you have

5   reserved.  In other words, kept.  One is that the sentence that

6   you receive is in violation in some way of your plea agreement.

7   I'm not sure how that would necessarily come out in this case,

8   because the sentence is being left up to the Court.  In other

9   words, the parties haven't bound the Court in some way to

10  impose a particular sentence.  But there could be something, I

11  guess, that might come up.

12      Or, it's in violation, the sentence, in violation of a

13  law.  That could happen.  Or the Constitution, that could

14  happen.

15      And you're also reserving your right to claim your counsel

16  was ineffective.  This -- it's pretty unlikely in your case,

17  given the lawyer you have, who's very experienced and very

18  well-respected.  But I guess even the best could make a

19  mistake.

20      So, do you understand you do have these rights, but

21  they're much more limited than what you would otherwise have if

22  you didn't go forward under the plea agreement?

23          **THE DEFENDANT:**  I understand, Your Honor.

24          **THE COURT:**  Okay.  And for a collateral attack --

25   sometimes people call it a petition for writ of habeas

1     corpus -- people can bring extra things up in that kind of a

2     challenge that may not be clear from the record, things that

3     may have happened behind the scenes.  You don't have the right

4     to a lawyer, necessarily, for that type of attack, but

5     sometimes courts appoint them.  But in any case, you're giving

6     up everything that you might be able to argue for that attack,

7     except that same argument that you did not receive effective

8     assistance of counsel.

9          So are you aware, again, very limited rights you're

10    reserving?

11              **THE DEFENDANT:**  Yes, I am, Your Honor.

12              **THE COURT:**  Okay.  This is not necessarily unusual.

13    The government ordinarily does ask for waivers of this sort.

14    But, just so that you do understand that.

15         Now, I can't take your plea if you're just nervous about

16    going to trial.  There has to be a factual basis for the Court

17    to accept a plea from someone.  You have a lengthy description

18    of facts that you state are true.  And they are listed in a

19    section numbered 2.  It begins on Page 3, and it goes over for

20    a number of pages.  I think even into part of Page 6.  So there

21    are quite a few facts.  And I don't want to go through all of

22    them with you.

23         But essentially, just as sort of a brief overview, that

24    you had a company -- did you pronounce it Benja?

25              **THE DEFENDANT:**  Yes, Your Honor.

1          **THE COURT:**  Benja, Inc.  And in order to get

2    investors, you told the investors various things about the

3    company, and -- that weren't really correct.  And that you got

4    money that you used for things that weren't what it -- you

5    know, wasn't supposed to be used for, including personal items

6    of your own.  As opposed to investing in the company.  And so

7    there were some victims that were alleged.  One is a venture

8    capital firm that I guess the government didn't want to state

9    the name of in the papers, so they are just identified as "VC

10   Firm E."  And then there's also an individual investor who's

11   identified by the initials "R.H."

12         And, now, both the firm and the investor, as I mentioned,

13   according to what you've said here, were given false

14   information about the favorable circumstances of Benja.  And

15   then you say as a result, the total loss that would be

16   attributable to the scheme is more than $3,500,000, but not

17   greater than $9,500,000, those sums being the points of

18   demarcation for purposes of the sentencing guidelines in

19   determining an offense level.  So, in that block of numbers

20   somewhere, you are agreeing that that's where it falls.

21         These events happened in the Northern District of

22   California, according to what you've said, and that you knew

23   what you were doing, and that the -- there was a

24   federally-insured entity that was involved as a victim.  And

25   that wires were used.

1      So that's a very, very brief overview.  Are all the

2  statements that are contained in that section, No. 2, in all

3  their detail, true and correct in all respects?

4          **THE DEFENDANT:**  Uh, yes, Your Honor.

5          **THE COURT:**  That would be enough for a factual basis

6   for all three of the offenses.

7      Now, I have no idea what your sentence would be in this

8  case, if you do plead guilty.  You have, in terms of presenting

9  an argument at the time of sentencing, arrived at an agreement

10  with the government as to certain things.  So you are arguing

11  that the offense level would be calculated in a particular way

12  that gets somewhat involved because of the fact there's three

13  counts.  The end result being an adjusted offense level of 23,

14  as I understand it.

15      And I'm assuming -- did you go over with your attorney

16  that page on the -- a soft-cover book, it's got hundreds of

17  numbers on it, in columns?

18          **THE DEFENDANT:**  Yes, Your Honor.

19          **THE COURT:**  Okay.  I don't have any question that you

20   are able to understand it.  When you first look at it, it kind

21   of makes your eyes swirl around a little bit, you know.  But

22   then you find the offense level, you find the criminal history

23   category.  And then you come down to the point that those two

24   axes meet and you come up with the box.  The Court used to

25   have to impose a sentence within that box, with rare

1    exception, that were set out essentially in the guidelines.

2    Now the Court has to go through all the effort, as does the

3    Probation Office and everybody else, to figure out what the

4    appropriate box is.  And then the Court doesn't have to impose

5    the sentence that's in it, but at least has to consider it.

6    So that's why I say I can't really give you any idea what your

7    sentence would be.

8        You are reserving the right, as you say here, to seek a

9    downward variance, which means you can ask the Court to go

10   below whatever the low end of that range is that ends up in the

11   appropriate box.  The government is agreeing that it will

12   recommend a sentence of no more than 36 months.  So, no matter

13   where that box comes out, they are committing to recommending a

14   sentence that's no more than -- I mean, I'm not saying that

15   that's no time for anybody to be concerned about.  But, no more

16   than three years.  So even if the box had more, much more than

17   that -- and they often do commit to staying in the box.  In

18   this case, they're committing to imposing -- or recommending a

19   sentence that may even be lower than what's in the box.  But I

20   haven't done any calculation to try and figure that out.

21       But in any event, so you understand what both sides are

22   limited to when they make an argument.

23           **THE DEFENDANT:**  Yes, Your Honor.

24           **THE COURT:**  Okay.  And again, not to shake you up,

25   but I don't have to follow any of the recommendations.  Are

1    you aware of that?

2                **THE DEFENDANT:**  I understand, Your Honor.

3                **THE COURT:**  Okay.  Fine.  All right.  Let's see.

4    They are also, and you're agreeing, both of you are, that the

5    Court would impose as a condition of supervised release a

6    special search condition.  That's turning out not to be so

7    special anymore.  They generally do ask for this.  But it does

8    allow you to be searched pretty much by anybody who is in law

9    enforcement, and not having to have the same, oh, information

10   that they might otherwise need to have under current

11   constitutional law.  Sometimes that's referred to as "probable

12   cause."  Also reasonable suspicion, which could be a little

13   less than probable cause.  But they don't need that.  They

14   probably can't just search you to harass you.  But if they've

15   got a hunch for example, what may be called a "policeman's

16   hunch," they can act on it.  So anyway, that's what that

17   search boils down to.

18       Let's see for a minute.  You are agreeing that whatever

19   restitution you might be required to pay won't be limited to

20   the losses that can be directly attributable to these counts

21   that you are admitting, if you do you admit them.

22       And it also says the Court will not consider your economic

23   circumstances in determining the amount.  In calculating the

24   amount, that's true.  And as far as ordering payment,

25   ordinarily, yes, somebody would be ordered to pay the full

1  amount of restitution.  Payment plans could vary, according to

2  somebody's ability, in that respect.

3      Okay.  Now, did anyone threaten you in any way to

4  encourage you to enter a plea?

5          **THE DEFENDANT:**  No, Your Honor.

6          **THE COURT:**  Did anyone make any promises to you that

7  aren't contained in the plea agreement?

8          **THE DEFENDANT:**  No, Your Honor.

9          **THE COURT:**  Have you taken anything that has a drug

10  or alcohol in it?  It could be by prescription -- before you

11  came to court today?

12         **THE DEFENDANT:**  No, Your Honor.

13         **THE COURT:**  Have you been prescribed anything that

14  you should be taking and didn't take before you came to court

15  today?

16         **THE DEFENDANT:**  No, Your Honor.

17         **THE COURT:**  Don't tell me your private conversations

18  with Ms. Pollock, but do you feel, as you stand there, that

19  you had enough time to explore with her any possible defenses

20  that you might have to any of these charges?

21         **THE DEFENDANT:**  I do, Your Honor.

22         **THE COURT:**  Let's see.  Counsel, let me ask you.  Is

23  there anything by way of a general admonition that you feel

24  like you should cover?  Or anything specific to the plea

25  agreement that would you like me to emphasize or go over, or

1    clarify?

2             **MS. HOPKINS:**  Your Honor, Kimberly Hopkins for the

3    government.  I think that you covered everything.

4             **MS. POLLOCK:**  I think it's sufficient, Your Honor.

5             **THE COURT:**  Did you have any question, Mr. Chapin?

6             **THE DEFENDANT:**  No, Your Honor.

7             **THE COURT:**  Well, let me get the indictment back in

8    front of me.  I just want to go over again for a minute --

9    the information, rather.  I misspoke.

10       I'm just looking, because of the length of the

11   allegations, whether I can shorten this up a little bit, but

12   still make clear which counts we are talking about.  And I

13   think it's a good idea if you can go -- read along with me,

14   that that's helpful.

15       Do you have a copy of the information there?

16            **MS. POLLOCK:**  Yes, Your Honor.

17       Yes, Your Honor.  Sorry.

18            **THE COURT:**  All right, thank you.  Because if you

19   just want to look in Count 1, it goes on for over a page, just

20   on the factual allegations, and then Count 2 incorporates.

21       All right.  So, all right.  Andrew Chapin, you are charged

22   in Count 1 of the information with a violation of Title 18 of

23   the United States Code, Section 1344, briefly described as

24   "bank fraud."  And more particularly, beginning at an unknown

25   date but no later than June of 2019, and continuing to in or

```
 1    about September, 2020, in this district, the Northern District

 2    of California, that you did knowingly, with intent to defraud,

 3    devise and execute a scheme and artifice to defraud Busey Bank

 4    as to a material matter, and to obtain money, funds, credits,

 5    assets and other property by and under the custody and control

 6    of that bank, namely lines of credit totaling $5 million, by

 7    means of material false and fraudulent pretenses,

 8    representations and promises, and by concealment of material

 9    facts.

10         To that charge, as fully set out in Count 1, what is your

11    plea?

12              THE DEFENDANT:  Guilty, Your Honor.

13              THE COURT:  In Count 2, you are charged with a

14    violation of Title 18 of the United States Code, Section 1343,

15    briefly described as "wire fraud," and that beginning and

16    ending -- well, I'm sorry, this one is a different timeframe.

17    Beginning at an unknown date but no later than March of 2020,

18    and continuing to in or about June of 2020, that you did

19    knowingly, with intent to defraud, participate in, devise, and

20    intend to devise a scheme and artifice to defraud as to a

21    material matter, and to obtain money and property by means of

22    materially false and fraudulent pretenses, representations and

23    promises, and by means of omission and concealment of material

24    facts, induce a $1 million investment from venture capital

25    firm described partly as "E."
```

1      To that charge, as fully set out in Count 2, what is your

2  plea?

3           **THE DEFENDANT:**  Guilty.

4           **THE COURT:**  Lastly, in Count 3, it is alleged that

5  you violated Title 15 of the United States Code, Sections

6  78j(b), and 78ff, as well as 17 C.F.R. Section 240.10b-5,

7  briefly described as "securities fraud."  And more

8  particularly, beginning at an unknown date, but no later than

9  November of 2018, and continuing to in or about September,

10  2020, that you did willfully and knowingly use a manipulative

11  or deceptive device in connection with the purchase and sale

12  of securities by employing devices, schemes, and artifices to

13  defraud, and making untrue statements or misleading omissions

14  of material fact about Benja's revenue, and current investors

15  to induce a $100,000 investment from Investor R.H., in

16  exchange for 1,278 shares of common stock in Benja.

17      To that charge as fully set out in Count 3, what is your

18  plea?

19           **THE DEFENDANT:**  Guilty, Your Honor.

20           **THE COURT:**  Well, I am going to accept the guilty

21  pleas.  We have spent a considerable amount of time talking

22  about these events.  I'm satisfied this is a plea that is

23  entered knowingly and voluntarily, certainly not lightly, or,

24  having questioned Mr. Chapin, under any threat or otherwise

25  being compelled or feeling compelled to enter the plea.

1    He's also executed the plea agreement and -- in that same

2   state of mind.  In other words, freely and voluntarily, not

3   under any threat, and clearly understanding the circumstances

4   and the consequences and the full content of the plea

5   agreement.

6    So let me hand that to the clerk so that can be filed.

7    Did you discuss with Ms. Geiger a date to come back?

8    **MS. HOPKINS:**  Yes, Your Honor.  We are set for

9   sentencing for October 6th, 2021.  It's in person.

10    **THE COURT:**  All right.

11    **MS. HOPKINS:**  At 2:15.

12    **THE COURT:**  2:15.  Now, we don't know where that will

13   be.  It's a date that we can reserve a courtroom, correct,

14   Ms. Geiger, if we have to?

15    It may be that by that date -- and I'm hoping that by that

16   date, the various judges of this district can be back in their

17   own courtrooms.  The judge who sits in this court regularly,

18   Judge Alsup, is close to a foot taller than I am, and so we

19   have to move this heavy footrest in front of the bench chair

20   here every time I have to walk the block from my chambers down

21   to this courtroom, because otherwise I would be spinning around

22   on the chair.  So I would like to get back to where we're all

23   comfortable and familiar.  But if we have to be in another

24   courtroom, then we will be.  But we will make sure to

25   accommodate everybody in person.  It does make a difference in

1  many instances.  And I can understand why you might want to

2  have the hearing in person.

3      Okay.  Let me ask, is there anything else counsel feels we

4  have to take up before we conclude the proceedings today?

5          **MS. HOPKINS:**  I don't think so, Your Honor.  Just to

6  clarify, the government acknowledges that Mr. Chapin has

7  complied with his pretrial release conditions, and has no

8  objection to him remaining out of custody.

9          **THE COURT:**  All right.  He hasn't presented any

10  danger to anyone while on release or constituted a flight

11  risk.

12          **MS. POLLOCK:**  No, Your Honor.

13          **THE COURT:**  All right.  Well, it's nice to see

14  everybody -- although not you, Mr. Chapin; I would prefer

15  you're not here.  But since you are, all right.

16      And that will conclude our proceedings today.  We stand in

17  recess.  Thank you.

18          **MS. POLLOCK:**  Thank you.

19          **MS. HOPKINS:**  Thank you very much, Your Honor.

20          **THE COURTROOM DEPUTY:**  Court is in recess.

21      (Conclusion of proceedings)

22

23

24

25

**CERTIFICATE OF REPORTER**

     I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Belle Ball*

_____
/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Friday, July 16, 2021