STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

KIMBERLY HOPKINS (MABN 668608)
SCOTT D. JOINER (CABN 223313)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Scott.Joiner@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 21-00217 MMC |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Date: December 15, 2021 |
| ANDREW JAMES CHAPIN JR., | Time: 2:15 PM |
| Defendant. | Court: Hon. Maxine M. Chesney |

U.S. SENTENCING MEMORANDUM
CR 21-00217 MMC

## I. INTRODUCTION

The defendant, Andrew Chapin, stands before the Court to be sentenced following his guilty pleas to Counts One through Three of the captioned Information charging him with Bank Fraud in violation of 18 U.S.C. § 1344 (Count One), Wire Fraud in violation of 18 U.S.C. § 1343, and Securities Fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5. The defendant's fraud scheme used sophisticated means to target a variety of investors and entities, resulting in more than $8 million in losses. The seriousness of the defendant's offense cannot be understated. He also demonstrated significant acceptance of responsibility, however, by promptly resolving the charges against him, pleading guilty before indictment, and offering assistance in a related bankruptcy proceeding. Accordingly, the government respectfully asks the Court to impose a custodial sentence of 36 months in prison to be followed by three years of supervised release, the expanded search condition agreed upon by the parties, a mandatory special assessment of $100 per count, and total restitution of $8,069,900 pursuant to the restitution schedule contained in U.S. Probation's Presentence Investigation Report (ECF No. 49) ("PSR").

## II. OFFENSE CONDUCT

As described in the PSR (¶¶ 6-22) and Plea Agreement (ECF No. 42 at 3-6), it took just over one year (15 months) for Chapin to fraudulently obtain more than eight million dollars from a number of victims using his company, Benja, Inc. Benja had its roots in a company named EPHE, which Chapin founded in Boston in 2014. In 2016, he moved the company to San Francisco and changed its name to Benja Inc. Chapin acted as the CEO of Benja, which purported to be a digital advertising company that provided "shoppable media" by placing advertisements for companies with overstocked goods on various websites. The website then allowed shoppers to purchase products in the advertisement itself without being redirected to another website.

Between June 2019 and September 2020, Chapin sought additional investors and lines of credit for Benja, falsely representing to creditors and prospective investors that Benja generated $6,200,000 and $13,200,000 in revenue in 2018 and 2019, respectively. He also falsely represented that Benja had signed large contracts with numerous well-known companies including Nike, Fanatics, Patagonia, and Backcountry, to place advertisements for their excess inventory. In truth, Chapin had fabricated Benja's

revenue and did not have contracts with any of these companies.

Beginning in June of 2019 and continuing until August of 2019, Chapin also made a series of false statements to Busey Bank to secure lines of credit for Benja totaling $5,000,000. For example, on June 24, 2019, he applied for a $1,000,000 line of credit. He provided financial statements, a balance sheet, incorporation documents, and tax information in support of the application. He designated Benja's assets as collateral for the loan and submitted a July 2019 Aged Receivables Report listing $2,027,290 in receivables, including $1,600,000 in current receivables from Nike, Patagonia, Backcountry, and Fanatics. This was false. As noted above, Benja did not have a business relationship with Nike, Patagonia, Backcountry, or Fanatics. Chapin ultimately received an advance on the line of credit from Busey Bank. He used most of the money to pay off creditors and investors and his personal credit cards. He also transferred a portion of the funds to a crypto-currency exchange account.

Chapin's fraud also extended to the venture capital sector, where he made a series of false statements and material omissions to induce investments from several victims, including $1,000,000 from VC Firm E and $1,800,000 raised during a SAFE (simple agreement for future equity) fundraising round from multiple investors. To secure investments, Chapin provided materially false information and fabricated millions in revenue and account receivables. For example, beginning on March 23, 2020, he contacted VC Firm E, a venture capital firm headquartered in New York, and expressed interest in partnering with the firm. VC Firm E reciprocated his interest and started the due diligence process. That same day, Chapin emailed M.S., a manager at VC Firm E, a link to a virtual data room with information on Benja, including a spreadsheet purporting to show that Benja's total revenue for 2019 was more than $13,000,000. The spreadsheet also falsely listed non-existent contracts with Nike, Fanatics, Backcountry, and Patagonia that represented more than $7,000,000 of the total income for 2019. To backstop the fraud, Chapin instructed Benja employees to impersonate representatives from Nike and Fanatics during reference calls with VC Firm E. VC Firm E relied on these misrepresentations and invested $1,000,000 in Benja. Chapin then used the money to pay off another creditor.

Chapin also made materially false and fraudulent representations and concealed material facts about Benja's revenue and existing investors to obtain money from individual investors in exchange for shares of common stock in Benja. For example, in November of 2018, a Benja investor introduced

Chapin to Investor R.H., an individual who resided in the Northern District of California. Chapin emailed financial statements to Investor R.H. that falsely listed more than $4,000,000 in revenue for Benja in 2018. Chapin also falsely claimed to Investor R.H. that VC Firm CC, an institutional venture capital firm based in St. Louis, Missouri, was planning to make a $1,500,000 investment in Benja. In truth, Chapin knew that VC Firm CC was not investing in Benja because the firm had already declined. Chapin also instructed an individual to impersonate Manager C.H. during a reference call with Investor R.H. The individual falsely told Investor R.H. that VC Firm CC used a third party to verify Benja's financials and had made customer reference calls, which were positive. Chapin then sent Investor R.H. a shareholder's agreement. Investor R.H. had additional questions about the agreement and asked for Manager C.H.'s contact information. Chapin, in turn, created a fictitious email address to impersonate Manager C.H. and respond to Investor R.H.'s questions about the shareholder's agreement. Relying on those false statements, Investor R.H. signed an agreement to purchase 1,278 shares of common stock in Benja for $100,000. Chapin then used most of that money to pay off his personal credit cards and transfer funds to his personal bank and crypto-currency exchange accounts.

In total Chapin obtained $8,069,900.00 from the following victims:[1]

| Individual / Entity | Amount |
|---|---:|
| Busey Bank | $5,000,000.00 |
| VC Firm E | $1,000,000.00 |
| B.A. | $150,000.00 |
| S.F. | $385,000.00 |
| P.W. | $150,000.00 |
| M.B. | $175,000.00 |
| S.S. | $150,000.00 |
| R.H. | $100,000.00 |
| X.L. | $600,000.00 |
| C.C. | $10,000.00 |
| T.K. | $100,000.00 |
| D.M. | $50,000.00 |
| T.P. | $50,000.00 |

---

[1] The PSR contains complete identification for the anonymized victims.

U.S. SENTENCING MEMORANDUM            3
CR 21-00217 MMC

| SBA EIDL Loan | $ | 149,900.00 |
|---|---|---|
| | $ | 8,069,900.00 |

### III.    SENTENCING GUIDELINES CALCULATION

The government agrees with the sentencing guidelines calculations set forth in the PSR (¶¶ 29-41), which result in a total offense level of 24.  The defendant has zero criminal history points and therefore falls within Criminal History Category I.

### IV.    SENTENCING RECOMMENDATION

#### A.    Applicable Law

Section 3553(a) directs the district court to consider a number of factors in determining an appropriate sentence.  In this case, these factors indicate that a sentence of 36 months in custody would be sufficient, but not greater than necessary, to achieve the goals of sentencing.  *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The key factors are the nature and circumstances of the offense and the history and characteristics of the defendant, the need to afford adequate deterrence to criminal conduct, the need to protect the public from further crimes of the defendant, and the need to impose a just punishment.  18 U.S.C. § 3553(a).

#### B.    Sentencing the Defendant to 36 Months in Custody Would Vindicate the Interests Set Forth in 18 U.S.C. § 3553(a)

There is no question that Chapin perpetrated a substantial and sophisticated fraud on a variety of institutional and individual victims.  Accordingly, the nature and the seriousness of his offenses require a significant custodial sentence to afford just punishment and adequate deterrence. However, as reflected in the plea agreement (ECF No. 42 ¶ 15), the government's recommendation is tempered by the defendant's substantial and prompt acceptance of responsibility.  Accordingly, the government joins in U.S. Probation's recommended sentence and asks that the Court impose a custodial sentence of 36 months in prison to be followed by three years of supervised release, the expanded search condition

//
//
//
//

agreed upon by the parties, a mandatory special assessment of $100 per count, and total restitution of **$8,069,900.00** in the amounts and to the victim's listed in paragraph 22 of the PSR.

DATED:  December 8, 2021                             Respectfully submitted,

                                              STEPHANIE M. HINDS
                                              Acting United States Attorney

                                                      /s/
                                              SCOTT D. JOINER
                                              KIMBERLY HOPKINS
                                              Assistant United States Attorneys