RANDY SUE POLLOCK
Attorney at Law (CSBN 64493)
286 Santa Clara Avenue
Oakland, CA 94610
Telephone: (510) 763-9967
Facsimile: (510) 380-6551
rsp@rspollocklaw.com

Attorney for Defendant
ANDREW CHAPIN

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br>　vs.<br><br>ANDREW CHAPIN,<br><br>　　　　　　　Defendant. | Case No. CR 21-00217-001-MMC<br><br>**SENTENCING MEMORANDUM ON BEHALF OF ANDREW CHAPIN**<br><br>Sentencing Date:　December 15, 2021<br>Sentencing Time:　2:15 p.m.<br>Ctrm: HON. MAXINE M. CHESNEY |

## I.

## INTRODUCTION

　　Andrew Chapin is an intelligent man who had everything going for him to succeed in life. His parents provided a loving and supportive environment that allowed him to excel in school, develop lifelong friends, and pursue extracurricular activities. Mr. Chapin's pursuit of success began when he joined the Cub Scouts of America. He earned Cub Scout badges, received awards, and eventually advanced to the highest rank of Eagle Scout.

　　As a young adult, Mr. Chapin's entrepreneurial mindset, success driven attitude, and acumen to conduct business by integrating technology led to creating EPHE Corporation in Boston, Massachusetts, in 2014.  In 2016, Mr. Chapin moved his start-up company to San Francisco and changed EPHE's name to Benja Inc.

Mr. Chapin was an enterprising and hardworking young businessman with a vision to achieve success in e-commerce and establish credibility in a highly competitive field. Mr. Chapin, as CEO of Benja, worked tirelessly raise venture capital and promote Benja's services. He was confident that Benja's distinctly constructed shoppable media that allowed consumers to purchase products from the advertisement itself, rather than the source website, would succeed. Mr. Chapin anticipated that Benja's success and unique brand would attract investors, appeal to big name online retailers, and set a new standard for ecommerce.

Unfortunately, the 'success' of Benja was fleeting because Mr. Chapin had no experience with the volatility of capital investing. Mr. Chapin anticipated a steady flow of investments and never imagined that Benja's collapse was imminent after one large investor demanded that Andrew return his substantial investment. Andrew complied, but then scrambled to keep Benja afloat after returning that investor's funds.

Mr. Chapin's fixation on operating a successful business is evident in his subsequent attempts to fund Benja with money from new investors and a lending institution. Rather than recognizing and accepting setbacks or obstacles, Mr. Chapin started down a dangerous and devastating path of fraudulent misrepresentations so that Benja could operate without disruption and eventually succeed in ecommerce. The road he took not only brought about the demise of Benja, including Chapter 7 bankruptcy, but it also brought financial hardships to many investors.

Andrew Chapin started Benja with a dream of success and became overwhelmed when his vision for success was compromised. Unfortunately, Mr. Chapin's concept of success was so much more appealing and impressive than the harsh reality of failure, and for this reason he became entangled in a web of misrepresentations that will now unfortunately impact him for the rest of his life.

## II.

## BACKGROUND OF THE CASE

Mr. Chapin was arrested on November 23, 2020, and he pled guilty shortly thereafter on June 16, 2021. The parties agreed to an adjusted offense level of twenty-three which

carries a guideline range of 46-57 months. Pursuant to the plea agreement, the agreed sentencing range is 12-36 months. Probation has concluded that because of grouping the adjusted offense level should instead be 24 which carries a range of 57-61 months. They are recommending a variance to 36 months.

## III.
## MR. CHAPIN'S OFFENSE CONDUCT
## CONSTITUTED ABERRANT BEHAVIOR

Under 18 U.S.C. §35553(a) a court can consider aberrant conduct or its equivalent principle as a mitigating factor. While USSG 5K2.20 limits this departure to a single criminal occurrence or single criminal transaction this can be considered as a variance under *Booker*. In *United States vs. Howe,* 553 F.3d 128, (3rd Cir. 2008)*,* the Court considered a mail fraud conviction as "an isolated mistake…in the context of [the defendant's] entire life. As noted in *United States vs. Garcia*, 182 F.3d 1165, 1176 (10th Cir. 1999), a finding of aberrant behavior should focus not on the number of discrete acts undertaken by the defendant but on the *aberrational character of the conduct*. In this case, Andrew Chapin engaged in conduct totally in opposition to the moral code he had followed all his life. His conduct is a shock not only to his family but also close friends who have known him since high school and college---people that relied on his word. Andrew's fraudulent conduct is in sharp contrast to the Eagle Scout principles that were his 'North Star," and which defined his background. See **Exhibit A,** Mr. Chapin's letter.

## IV.
## ANDREW CHAPIN'S HISTORY, PERSONAL CHARACTERISTICS
## SUPPORT A VARIANCE IN THIS CASE

Section 3553(a)(1) is a "broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant'". *Gall v. United States,* 552 U.S. 38, 50 (2007). Given the facts described in this section, this factor weighs heavily in favor of a downward variance from the Guidelines.

DEFENDANT'S SENTENCING MEMORANDUM  3
*U.S. v. Chapin,* CR 21-00217-001-MMC

From the presentence report we know that Mr. Chapin comes from a remarkably close family, and he was raised in a small town. His parents are supportive of Andrew and have provided him with emotional and financial support for the last year. See **Exhibit B**, parent's letter.

Attached to this memorandum are many letters from Andrew's friends who speak highly of him as a friend and commend him for taking responsibility and admitting his wrongdoing in this case.  See **Exhibit C.**

The two most telling letters written on his behalf are from two friends of Andrew's who are both successful entrepreneurs---Matthew Goldstein and James O'Brien. **Exhibits D and E**. Both Matthew and James write eloquently about the "Chapin" they know. Each of them realizes the incredible toll this conviction will have on Andrew, but they do not condone what he did.  They are frank in their assessment of him, and they are optimistic that he will again be a contributing member of society.

Matthew's letter is telling because he conveyed an honest and genuine portrayal of Andrew's character but at the same time, he very realistically explains how Andrew's actions jeopardized his relationships, lost him the trust of his longtime friends, and deprived him of lucrative career opportunities. He wrote as follows [**Exhibit D**]:

> "I'm sure it's unsurprising to learn that the woman he loved, his fiance, ended their engagement, but it goes so much deeper than that. He is for all intents and purposes banned from participating in the career and industry he invested so much of his life into, and ultimately ruined him. Many of his friends have abandoned him. He has lost the trust of quite literally everybody in his life. I can only imagine how painful and difficult this last year has been – he has paid egregiously for his sins, and his next steps in life will be very difficult ones. To me, getting started on that redemptive path sooner rather than later makes sense.
>
> Beyond losing a future wife, a career, friends, and losing the trust of even your family, one of the more painful examples I can point to is Andrew being let go as an advisor, stakeholder, and board member of his childhood friend's burgeoning sports media company. I know Andrew took special pride in his role in getting their company off the ground, and now they have abandoned and fired him, for obvious reasons. The company I'm referencing is on the fast track to huge financial valuations and has already

turned down lucrative acquisition offers from large media companies such as Turner Broadcasting and ESPN. …

One might think Andrew would be bitter or acrimonious, or even combative in this situation. Rather than having those negative feelings, and spoiling his taste for his friends and their company, Andrew has maintained great support for their skyrocketing business, publicly and privately. It's admittedly an immature stance to take, but I do not think I could stomach the sight of their success on a daily basis. Instead he's still a vocal cheerleader, just from the sidelines now sadly."

In a similar vein, Mr. Chapin's childhood friend James O'Brien expresses regret that Andrew's conduct resulted in his Board resignation, and wrote as follows [**Exhibit E**]:

"You can only imagine my shock when I heard about Andrew's arrest. We spoke the next day and he was tearful, remorseful, and nowhere near the honest and helpful Andrew, I had been speaking to regularly for the past two years.

Even on this difficult phone call where Andrew described the wrongs he had done, he managed to show his true colors: he told me and my co-founder that he would do whatever we felt was best for our growing company. He knew his continued involvement on our Board of Directors could raise questions and potentially impede our progress. He selflessly offered to step away from something I know mattered a lot to him, well beyond the multi-million dollar opportunity: a chance to build something cool with people he cares about. We accepted his resignation and he's unfortunately no longer involved in our company."

Mr. Chapin did engage in serious fraudulent misconduct, but he did not shirk from being honest with his friends. Because he has owned up to his misdeeds, his friends do still stand behind him. In fact, one of his friends, Sam Monroe, intends to hire Mr. Chapin as soon as Mr. Chapin is released from prison.

## V.

**ANDREW CHAPIN HAS DEMONSTRATED POST OFFENSE REHABILITATION**

Along with Mr. Chapin's criminal prosecution there has been a trailing SEC prosecution *SEC v. Benja Incorporated, et al.*, Case No. 20-cv-08238-JSW as well as a Chapter 7 bankruptcy proceeding, *In re. Benja Incorporated*, Case No. 20-30819-DM. In both

of these matters, Mr. Chapin has readily admitted his culpability, accepted the consequences of his conduct, and did everything asked of him in order to assist the parties.

In the bankruptcy proceedings, Mr. Chapin has cooperated fully with counsel for the Chapter 7 Trustee. He has met with them to explain the financial transactions, provided them with passwords for all his electronic devices, and was deposed in a Rule 2004 Examination on September 23rd. Whenever they have had any questions, Mr. Chapin has been willing to assist and promptly responds. Likewise in the SEC case, Mr. Chapin entered into a consent decree agreeing to be permanently restrained and enjoined from violating the Securities Act. Judgment was entered on September 1, 2021, [Docket 21], however the parties had been engaged in discussions for several months and Mr. Chapin worked towards an early resolution with them. Likewise, shortly after discovery was produced in this case, the parties began plea discussions.

Most recently, the government had questions of Mr. Chapin and he provided prompt responses to them. He did not consider whether resolution of the SEC matter or his assistance to the Bankruptcy Trustee would assist him in this case. Rather, he cooperated because he knew he had committed a very serious offense, and he wanted to own up to his mistakes.

Since his arrest last November, Mr. Chapin's conduct has been consistent with that of a person who truly accepts responsibility for his conduct.

## VI.
## CONCLUSION

Andrew Chapin had a dream to succeed in e-commerce, but unfortunately his company failed because of many misrepresentations he made to investors and to Busey Bank. The path he engaged in to recoup money for the company involved deceitful conduct, but he was a man spiraling out of control – personally with his cannabis and gambling addictions, and professionally trying to maintain an image of success – while simultaneously attempting to keep Benja afloat by any means possible. As noted by his close friends, pressure, anxiety and fear did in fact lead him to make very poor judgments.

In determining the appropriate sentence our courts look first to the sentencing guidelines. Beyond that guideline range is the consideration of just how much imprisonment is really essential to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment. Here we are considering the fate of a young man whose life has now taken an extremely sharp change of direction. He has lost his fiancé, he has no present income, and he is subject to a significant restitution in both this case, the SEC prosecution and a pending civil case brought by Busey Bank against Benja in the Eastern District of Missouri. The financial debts from those prosecutions will severely impact him for the rest of his life. Although he will no longer hold a C-Suite position, Mr. Chapin's skill set will bring value to any workplace. Fortunately, he has a job offer from a friend and will be able to begin paying restitution once he is released from prison. He knows he made huge mistakes and he now wants to make it right.

Mr. Chapin does acknowledge that three years is a reasonable and fair sentence given the financial losses in this case, however it is respectfully requested that this Court impose a 30-month sentence that will allow him to commence his enormous financial obligations sooner than later so that he can move on with his life.

Date:  December 8, 2021                                    Respectfully submitted,


                                                           /s/ *Randy Sue Pollock*
                                                           RANDY SUE POLLOCK
                                                           Counsel for Defendant ANDREW CHAPIN